UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREGORY PAUL VIOLETTE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BEN MASSOUH, ) <br> ) <br> Defendant. ) | Civil Action No. 4:20-40076-TSH |

**MEMORANDUM OF LAW IN SUPPORT OF**
**BEN MASSOUH'S MOTION TO DISMISS THE COMPLAINT FOR**
**LACK OF PERSONAL JURISDICTION, INSUFFICENT SERVICE OF PROCESS,**
**AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

NATHANIEL R. MENDELL
Acting United States Attorney

JASON C. WEIDA
Assistant U.S. Attorney

United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3180
Jason.Weida@usdoj.gov

Dated: March 29, 2021

*Attorneys appointed pursuant*
*to 28 C.F.R. § 50.15 to represent*
*Ben Massouh in his personal capacity.*

Defendant Ben Massouh ("Massouh"), cook supervisor at the Federal Medical Center in Devens, Massachusetts ("FMC Devens"), respectfully submits this memorandum of law in support of his motion to dismiss *pro se* Plaintiff Gregory Paul Violette's ("Plaintiff") First Amended Complaint (Doc # 11) for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, and for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **INTRODUCTION**

Plaintiff, who currently resides in Maine, was a federal prisoner at the times relevant here. Plaintiff alleges that, in December 2002, Massouh touched his "private area" and asked for a sex act. Among other things, Plaintiff seeks $1,000,000 in damages. Although Plaintiff did not describe his claim against Massouh, the Court has construed it as one under *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971). *See* Doc. # 12 ¶ 2.

This case should be dismissed on multiple independent grounds. *First*, this Court lacks personal jurisdiction over Massouh because Plaintiff never served the United States as required by Rule 4, despite this Court's express instructions for how to do so (and even after this Court provided the relevant addresses). *Second*, Plaintiff never filed a remedy—let alone exhausted administrative remedies—for his claim in this case. *Third*, the Court should decline to imply a *Bivens* remedy to Plaintiff's claim in light of the Supreme Court's opinion in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).

For these and other reasons discussed below, the Court should grant this motion and dismiss the case with prejudice.

# **BACKGROUND**[1]

Plaintiff alleges that, in December 2019, "Massouh called me into his office as the supervisor of the kitchen at the Camp at Devens Medical center. He told me to come into his office and then he closed the door, he told me to stand still and he reached over and touched my private area. He sexually assaulted me. He said to me, 'do you want to give me a blow job?'" Doc. # 11 at 1. Plaintiff alleges that, in March 2020, he "report[ed] the sexual assault to the US Department of Justice via the online reporting at the Camp." *Id.* Plaintiff seeks $1,000,000 in money damages, attorney's fees (though he is *pro se*), and other relief.. *Id.* at 2.

In June 2020, Plaintiff filed his first complaint. Doc. # 1. This Court promptly screened the complaint under 28 U.S.C. § 1915(e)(2), and issued an order requiring Plaintiff to show cause why his complaint should not be dismissed for failure to state a claim. Doc # 4. In September 2020, Plaintiff filed the First Amended Complaint, which is the operative pleading in this case. Doc. # 11. In addition to naming Massouh, Plaintiff also named or appeared to reference other defendants in the First Amended Complaint. *Id.* The same month, this Court dismissed all defendants except Massouh from the case on various grounds pursuant to § 1915(e)(2), and instructed the clerk to issue a summons for Massouh only. Doc. # 12 ¶¶ 2-3. The Court stated that, if Plaintiff wished to pursue claims against those other defendants, Plaintiff could "file a motion to amend his complaint to include claims against these parties, if any." *Id.* ¶ 3.

When the summons was issued, the Court also entered on the docket a "Notice to Plaintiff." Doc. # 14. The notice provided detailed instructions regarding the information and materials

---

[1] Because this is a motion under Rule 12, Massouh assumes the facts alleged in the First Amended Complaint to be true only for purposes of this motion to dismiss and reserves the right to contest the facts at any later stage of the proceedings. Indeed, Massouh vigorously denies the allegation that he touched Plaintiff's "private area" and asked for a sex act. If this case is not resolved on this motion, Massouh will demonstrate that Plaintiff's allegation is false.

2

Plaintiff was required to provide to the U.S. Marshals Service for them to serve Massouh on Plaintiff's behalf. *Id.* at 1. In addition, the notice provided a verbatim transcription of Rule 4(i) of the Federal Rules of Civil Procedure, which sets forth the service requirements for completing service on individuals like Massouh. *Id.* at 3-4. Among other things, the notice explained that Plaintiff was required to serve by mail both the United States Attorney's Office in this district and the Attorney General of the United States, and provided addresses for each of them. *Id.*

In October 2020, Plaintiff filed another pleading. *See* Doc. # 15 (the Second Amended Complaint). Plaintiff filed that pleading without leave, s*ee id.*, and never served it on Massouh or anyone else. Rather, in January 2021, on Plaintiff's behalf, the U.S. Marshals Service served the First Amended Complaint on Massouh. Doc. # 16.

After requesting additional time for the Department of Justice to process his representation request (Doc. # 18), Massouh filed this motion.

## STANDARD OF REVIEW

**Personal jurisdiction and service of process.** "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "Accordingly, one becomes a party officially, and is required to take action in that capacity, only upon service of a summons." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). *See generally United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1085 (1st Cir. 1992) (explaining that, although "personal jurisdiction and service of process are distinguishable, they are inextricably intertwined, since service of process constitutes the vehicle by which the court obtains jurisdiction").

"When a defendant seasonably challenges the adequacy of service, the plaintiff has the burden of showing that service was proper." *Vazquez-Robles*, 757 F.3d at 4; *see also Rivera–*

*López v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992) (recognizing that "once challenged, plaintiffs have the burden of proving proper service"); *Evariste v. United States*, No. 19-CV-11996, 2021 WL 828380, at *1 (D. Mass. Mar. 4, 2021) (same); *Aly v. Mohegan Council-Boy Scouts of Am.*, No. 08-40099, 2009 WL 3299951, at *2 (D. Mass. Apr. 20, 2009) ("When the sufficiency of process is challenged under Rule 12(b) (5), as defendant does here, plaintiff bears 'the burden of proving proper service.'" (quoting *Rivera–López*)).

**Failure to state a claim upon which relief can be granted.** To survive a motion to dismiss, "the plaintiff bears the burden of plausibly alleging a viable cause of action" under Rule 8(a). *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016). The "'tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Feliciano-Hernández v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). Rather, "'only a complaint that states a plausible claim for relief survives a motion to dismiss'" under Rule 12(b)(6). *Id.* (quoting *Iqbal*, 556 U.S. at 679). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (second alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

**ARGUMENT**

I. **THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION AND INSUFFICIENT SERVICE OF PROCESS.**

For an "Officer or Employee Sued Individually," such as Massouh, a plaintiff "must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g)." Fed. R. Civ. P. 4(i)(3). "To serve the United States," the plaintiff "must" serve both "the United States Attorney for the district where the action is brought," *id.* 4(i)(1)(A), and "the Attorney General of the United States at Washington, D.C.," *id.* 4(i)(1)(B).

This Court lacks personal jurisdiction over Massouh because Plaintiff has not satisfied the requirements of Rule 4. Specifically, Plaintiff never served the "United States" because he served *neither* the United States Attorney's Office in this district *nor* the Attorney General of the United States. Fed. R. Civ. P. 4(i)(1)(B). While Plaintiff served Massouh individually (Doc. # 16), that is only one of the three service requirements necessary for this Court to have personal jurisdiction over Massouh in this case. Fed. R. Civ. P. 4(i)(3).

Plaintiff's failure to serve the United States should not be excused. Plaintiff, who seeks the extraordinary remedy of holding a federal employee "personal[ly] liability for damages," *Abbasi*, 137 S. Ct. at 1863, has failed to take the most fundamental step in initiating a lawsuit— serving process under Rule 4—in more than *nine months* since this case was filed. That is more than *three times* the 90-day limit for service that the rules require. *See* Fed. R. Civ. P. 4(m); Local Rule 4.1. Although Plaintiff is proceeding *pro se*, he was on actual notice of exactly what he was required to do to effect service. Indeed, more than six months ago, the Court itself provided Plaintiff with a notice that included (1) a verbatim transcription of Rule 4(i), (2) instructions that Plaintiff was required to serve by mail both the United States Attorney's Office in this district and the Attorney General of the United States, and (3) the addresses for both the United States Attorney's Office and the Attorney General. Doc. # 14.

The discretion courts possess to excuse the failings of *pro se* plaintiffs is not limitless. Given the exceptional length of time that has passed since this case was filed, Plaintiffs' failure to satisfy Rule 4 during that length of time, Plaintiffs' failure to follow this Court's own instructions for how to effect service, and in light of the extraordinary nature of the relief sought against Massouh in his personal capacity, the Court should dismiss the complaint with prejudice.[2]

## II. THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM BECAUSE PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES UNDER THE PLRA.

### A. Plaintiff Failed to Exhaust.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [section 1979 of the Revised Statues of the United States (42 U.S.C. 1983)], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA applies to *Bivens* lawsuits, *Porter v. Nussle*, 534 U.S. 516, 524 (2002), and, indeed, applies to "all inmate suits about prison life," *id.* at 532. *See also Cutter v. Wilkinson*, 544 U.S. 709, n. 12 (2005) (similar); *Medina-Claudio v. Rodriquez-Mateo*, 292 F.3d 31, 36 (1st Cir. 2002) (same). *Accord Jackson v. District of Columbia*, 254 F.3d 262, 266 (D.C. Cir. 2001) (same); *Walker v. O'Brien*, 216 F.3d 626, 636-37 (7th Cir. 2000) (same).

---

[2] The Court also should strike Plaintiff's Second Amended Complaint. Doc. # 15. A party may amend its pleading once "as a matter of course" within 21 days after filing or 21 days after a responsive pleading or motion has been filed. Fed. R. Civ. P. 15(a)(1). All other amendments before trial may only be made "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Amendments filed without consent or leave are "without legal effect." *Trustees of Bos. Univ. v. Everlight Elecs. Co.*, No. 12-11935, 2014 WL 12792362, at *2 (D. Mass. May 8, 2014) (recommending that the district court strike the plaintiff's amended pleading for failure to seek leave to file). Here, because Plaintiff's Second Amended Complaint was filed contrary to the rules and this Court's own instructions, it should be stricken. *E.g.*, *id.*, Fed. R. Civ. P. 15(a); *Everlight Elecs. Co.*, 2014 WL 12792362, at *2. In all events, Plaintiff never served the Second Amended Complaint on anyone—even Massouh—and the time to do so expired long ago. *E.g.*, Fed. R. Civ. P. 4(i); *see* Doc. # 12 ¶ 1 (requiring service no later than December 22, 2020).

The BOP's Administrative Remedy Program allows an inmate to seek formal review of a grievance. 28 C.F.R. § 542.10. For most types of claims, an inmate must first attempt resolution of his complaint by presenting the issue informally to staff, and staff must try to resolve the issue. *See* 28 C.F.R. § 542.13. If the complaint cannot be resolved informally, the inmate may submit a formal written Request for Administrative Remedy to the Warden on a "BP-9" form within 20 days of the event that triggered the inmate's grievance. *See* 28 C.F.R. § 542.14. If the inmate is not satisfied with the Warden's response, the inmate may submit an appeal (a "BP-10") to the appropriate Regional Director within 20 calendar days of the Warden's response. *See* 28 C.F.R. § 542.15. Finally, an inmate who is not satisfied with the Regional Director's response may submit an appeal (a "BP-11") to the Office of General Counsel in the BOP's Central Office within 30 calendar days of the Regional Director's response. *See id.* No administrative remedy appeal is considered exhausted until it is considered by the BOP's Office of General Counsel. *See* 28 C.F.R. §§ 542.14-15; *see also Irwin v. Hawk*, 40 F.3d 347, 349, n.2 (11th Cir. 1994).[3]

For sexual abuse claims, the Prison Rape Elimination Act ("PREA"), 34 U.S.C. §§ 30301-09, modified some of the PLRA's exhaustion *procedures* but did not eliminate the PLRA's exhaustion *requirement*. *E.g.*, *Dunfee v. Barry*, No. 17-40108, 2018 WL 4571659, at *3 (D. Mass. Sept. 24, 2018) (Hennessy, M.J.) (denying motion to amend complaint as futile because prisoner failed to exhaust sexual abuse claim under the PLRA subject to PREA's medications).[4] "PREA

---

[3] For most types of claims, inmates must comply with each step of these internal procedural rules. *Woodford v. Ngo*, 548 U.S.81, 93 (2006); *Acosta v. U.S. Marshals Service*, 445 F.3d 509, 512 (1st Cir. 2006). Requiring inmates to abide by such procedural rules provides prison staff the opportunity to resolve complaints internally, furthering the purposes of the PLRA to "eliminate unwarranted federal-court interference with the administration of prisons," and "reduce the quantity and improve the quality of prisoner suits." *Woodford*, 548 U.S. at 93 (quoting *Porter*, 534 U.S. at 524). Permitting an inmate to ignore the procedural requirements of the remedy process would deprive the institution of "a fair opportunity to correct their own errors." *Id.* at 93.

[4] *Accord Porter v. Howard*, 531 F. App'x 792, 793 (9th Cir. 2013) ("[Plaintiff] provides no support for his contention that he was excused from the requirement that he file an

7

was enacted 'to address the problem of rape in prison by creating a commission to study the issue and to develop national standards for the detection, prevention, reduction and punishment of prison rape.'" *Id.* (quoting *Amaker v. Fischer*, No. 10-0977, 2014 WL 4772202, at *14 (W.D.N.Y. Aug. 27, 2014)). PREA, however, did not "abrogate the PLRA's exhaustion requirement." *Id.* Rather, PREA "modifie[d] some of the exhaustion requirements, such as eliminating the informal resolution requirement and time restrictions for filing a grievance regarding sexual assault." *Id.* (citing 28 C.F.R. § 115.52). Subject to those procedural modifications, however, "[a] plaintiff is still required to follow the process at 28 C.F.R. §§ 542.10-542.19." *Id.*

Here, Plaintiff *never* filed any remedy regarding—let alone exhausted—his claim against Massouh in this case. Decl. of Cheryl Magnusson, dated Mar. 23, 2021, attached as <u>Exhibit 1</u> hereto, ¶¶ 6-12.[5] Plaintiff never filed a remedy at FMC Devens in the five months from the date of the alleged incident until he was transferred from FMC Devens to home confinement. *See id.* ¶ 5 (transferred to home confinement on May 14, 2020). Nor did Plaintiff ever file a remedy through the procedures available to him from the date of his home confinement until he was released in February 2021. *See id.* ¶ 5 (Plaintiff in home confinement from May 14, 2020, until his release on February 1, 2021); *see also id.* ¶¶ 9-10 (explaining administrative remedy process

---

administrative grievance by operation of the Prison Rape Elimination Act"); *Parry v. Muller*, No. 18-1394, 2018 WL 4027572, at *3 (S.D. Ill. Aug. 23, 2018) ("Plaintiff is still required to follow the process at 28 C.F.R. § 542.10, et seq., subject to PREA's modifications."); *Omaro v. Annucci*, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("Nothing in the text or legislative history of the PREA suggests that it was intended to abrogate the PLRA's exhaustion requirement."); *Lamb v. Franke*, No. 12-00367, 2013 WL 638836, at *2 (D. Or. Feb. 14, 2013) ("The PREA does not impose an alternative remedial scheme, nor does it supersede PLRA's exhaustion requirement.").

[5] Courts, including this Court, have recognized that "in deciding [a] motion to dismiss for failure to exhaust, [they] may consider matters filed outside of the pleadings without converting such motion to one for summary judgment." *Dzanku v. Brennan*, 270 F. Supp. 3d 376, 378 n.2 (D. Mass. 2017).

while on home confinement).  Rather, Plaintiff only filed this lawsuit, which does not qualify. *E.g.*, *Dunfee*, 2018 WL 4571659, at *3.

### B. Plaintiff Failure to Exhaust Cannot Be Excused.

Because Plaintiff failed to exhaust his claim, the Court should dismiss the First Amended Complaint unless Plaintiff has shown that his case fits within an exception to the exhaustion requirement.  Failure to exhaust may be excused (1) where the remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use;" or (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016).  None of those three narrow exceptions applies here.

The first exception—that the process for relief was "a simple dead end"—is patently inapplicable in this case.  As described above, Plaintiff had available to him a robust set of procedures described above.  *See supra* Part I.  Because he took *no action* required under those procedures, it cannot be said that he was met "with officers unable or consistently unwilling to provide any relief."  *Ross*, 136 S. Ct. at 1859-60.

The second exception—that the administrative process was "so opaque" as to become "incapable of use"—is also inapplicable.  Since the alleged incident, Petitioner filed *20 remedies* between 2016 and 2020 in unrelated matters through the BOP's Administrative Remedy Program.  Ex. 1 ¶ 11.  Given that Petitioner correctly used the administrative remedy process in response to other incidents, he cannot legitimately argue that the process was so opaque to him that he could not use it for the incident that gave rise to this case.

The third and final exception—that administrators inappropriately "thwart[ed]" use of the process—is inapplicable as well.  While Plaintiff alleges that he initially "did NOT want to tell

9

anyone because Missouh would make his life at the Camp really hard," Plaintiff admits that he was *not* thwarted from reporting the alleged incident. Doc. # 11 at 1. Indeed, in the very next sentence of the First Amended Complaint, Plaintiff alleges that he "report[ed] the sexual assault to the US Department of Justice via the online reporting at the Camp." *Id.* In addition, Plaintiff later "made a statement to them" regarding the alleged incident. *Id.* Thus, because Plaintiff's own First Amended Complaint admits that he was not hindered from reporting the alleged incident, Plaintiff cannot satisfy this prong under *Ross*. *Ross*, 136 S. Ct. at 1859-60.

Accordingly, because Plaintiff failed to exhaust his administrative remedies as required by the PRLA, and because none of the exceptions to the exhaustion requirement applies in this case, the First Amended Complaint should be dismissed for failure to state a claim. *See Johnson v. California*, 543 U.S. 499, 528 n.1 (2005) (assuming that PRLA exhaustion is not jurisdictional); *Casanova v. Dubois*, 289 F.3d 142, 147 (1st Cir. 2002) ("Although not jurisdictional, the exhaustion requirement is nonetheless mandatory" under the PLRA).

### III. THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM BECAUSE THERE IS NO *BIVENS* REMEDY.

In *Bivens*, the Supreme Court implied a cause of action directly under the Fourth Amendment for an unreasonable search and seizure when federal law enforcement entered and searched the plaintiff's apartment without a warrant and arrested him for narcotics violations. *Bivens*, 403 U.S. at 390, 397. The Court implied a damages remedy against the agents only after finding that "no special factors counsel[ed] hesitation." *Id.* at 396. In the more than forty years since *Bivens*, the Court has implied a damages remedy against federal employees for alleged constitutional violations in only two other instances: an alleged Fifth Amendment violation for gender discrimination arising from a Congressman's firing of his female assistant, *Davis v. Passman*, 442 U.S. 228, 248-49 (1979), and an Eighth Amendment violation against prison

officials for failing to provide emergency medical treatment that caused an inmate's death, *Carlson v. Green*, 446 U.S. 14, 19 (1980).

"These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855. And in the last forty years the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants," *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001), declining to imply a *Bivens* remedy in numerous cases and contexts. *See Abbasi*, 137 S. Ct. at 1857 (collecting cases). A *Bivens* remedy "is not an automatic entitlement" and is "in most instances . . . unjustified." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). In fact, in 2017, the Supreme Court "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675). As the Court put it, "[w]hen a party seeks to assert an implied cause of action under the Constitution . . . separation-of-powers principles are . . . central to the analysis," and "[w]hen an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them." *Id.*

Thus, the "antecedent" question in every *Bivens* case is whether a remedy for the alleged conduct should be implied at all. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017). First, "a court must ask . . . whether the claim arises in a new *Bivens* context, *i.e.*, whether 'the case is different in a meaningful way from previous *Bivens* cases decided by this Court.'" *Abbasi*, 137 S. Ct. at 1864. If the case presents a new *Bivens* context, then courts must consider whether "special factors" counsel hesitation before extending *Bivens* and implying a personal damages remedy. *Id.*; *Wilkie*, 551 U.S. at 550. The answer to both questions is yes.

### A. Plaintiff's Claim Arises in a New *Bivens* Context.

The test for determining whether a case arises in a new context is whether it "is different in a meaningful way from [the three] previous *Bivens* cases decided by [the Supreme] Court[.]" *Abbasi*, 137 S. Ct. at 1859. A "context is new" when there is an extension, however "modest," of the claims approved of in *Bivens*, *Davis*, or *Carlson*. *Abbasi*, 137 S. Ct. at 1859, 1864. Factors to consider in deciding whether a context meaningfully different, and therefore new, include: an official's rank; the constitutional right at issue; the generality or specificity of alleged conduct; the extent of judicial guidance as to how an official should respond; the legal mandate under which the official was operating; the risk of intrusion by the judiciary into other branches of government; or the presence of other special factors not considered in previous *Bivens* cases. *Id.* at 1859-60.

Here, Plaintiff's sexual assault claim is markedly different from the claims in *Bivens* and *Davis*. Even *Carlson*, which involved prison officials' failure to provide an inmate with medical treatment, 446 U.S. at 19, "bear[s] little resemblance," *see Abbasi*, 137 S. Ct. at 1860, to Plaintiff's allegations here. *Carlson* arose out of a fatal, pre-PLRA medical emergency; the inmate could not have turned to the administrative remedy process or a suit for equitable relief. *See Abbasi*, 137 S. Ct. at 1865. Mr. Carlson died because those on the scene made obvious errors in responding to a physical condition with clear-cut treatment protocols. *See Carlson*, 446 U.S. at 16 n.1 (describing prison staff "fail[ing] to give him competent medical attention [for an asthma attack] for some eight hours," "administer[ing] contra-indicated drugs," and "attempt[ing] to use a respira-tor known to be inoperative").

Plaintiff, by contrast, does not claim that his serious medical needs have gone unaddressed or that prison staff affirmatively worsened his condition in the face of an emergency. Rather, he asserts that a prison employee touched Plaintiff's "private area" and asked for a sex act. Doc. # 11 at 1. Even in cases where "[t]he differences between [a] claim and the one in *Carlson* are

perhaps small"—and this case is not one of them—"the new-context inquiry is easily satisfied." *Abbasi*, 137 S. Ct. at 1865. And, as its own decisions make clear, the Supreme Court has not recognized an Eighth Amendment claim beyond the context of prison medical care, *see Minneci v. Pollard*, 565 U.S. 118, 124 (2012) (collecting cases), a context that has nothing to do with this case. Because the context here is "different in a meaningful way from previous *Bivens* cases decided by this Court," this case presents a "new" *Bivens* context. *Abbasi*, 137 S. Ct. at 1864.

### B. Special Factors Preclude A *Bivens* Remedy Here.

"[I]t is a significant step under separation-of-powers principles for a court to" accept Plaintiff's invitation to "create and enforce a cause of action for damages against federal officials." *Abbasi*, 137 S. Ct. at 1856. At bottom, "[t]he question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Id.* at 1857 (quoting *Bush v. Lucas*, 462 U.S. 367, 380 (1983)). "The answer most often will be Congress." *Id.*; *see id.* at 1858 ("[T]o be a 'special factor counselling hesitation,' a factor must" only "cause a court to hesitate[.]"). Furthermore, as *Abbasi* demonstrates, "special factors" must be considered in the *aggregate*. *See id.* at 1857–58, 1860–63; *accord Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (explaining that "[t]aken together, the unique disciplinary structure of the Military Establishment and Congress' activity in the field constitute 'special factors'"). Taken together, the "special factors" present in this case more than suffice to "cause a court to hesitate" before extending *Bivens* into the new context presented here. *Abbasi*, 137 S. Ct. at 1858; *see Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009) (*en banc*) ("Hesitation is a pause, not a full stop, or an abstention; and to counsel is not to require. 'Hesitation' is 'counseled' whenever thoughtful discretion would pause even to consider.").

**PREA.** As relevant here, the enactment of the PREA is a special factor strongly counselling against extending *Bivens* in this case. *See Abbasi*, 137 S. Ct. at 1865 ("legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling

13

hesitation."). "PREA was enacted 'to address the problem of rape in prison by creating a commission to study the issue and to develop national standards for the detection, prevention, reduction and punishment of prison rape.'" *Dunfee*, 2018 WL 4571659, at *3 (quoting *Amaker*, 2014 WL 4772202, at *14). As this Court itself has recognized, "[e]very court to address the issue has held that the PREA does not allow a private cause of action." *Ventre v. Forgues*, No. 11-40205, 2013 WL 597643, at *5 (D. Mass. Feb. 14, 2013) (Hillman, J.). In other words, Congress had the opportunity to create a privately-enforceable damages remedy against federal officials for claims relating to prison rape, but chose to create non-financial remedies instead.

Indeed, courts that have addressed this very question since *Abbasi* have declined to create a *Biven* remedy based in part on Congress's decision to create other, non-financial remedies when a prisoner, like Plaintiff here, alleges sexual assault in prison. *E.g.*, *Freedland v. Mattingly*, No. 20-CV-00081, 2021 WL 1017253, at *9 (M.D. Pa. Mar. 17, 2021) (dismissing *Bivens* claim predicated on sexual assault by prison official based on analysis mandated by *Abbasi*); *Dudley v. United States*, No. 19-317, 2020 WL 532338, at *7 (N.D. Tex. Feb. 3, 2020) (same); *Taylor v. Lockett*, No. 17-00023, 2019 WL 764023, at *8 (M.D. Fla. Feb. 21, 2019) (same). As these decisions recognize, congressional inaction in this specific context strongly counsels against judicial creation of such a remedy that the legislature has not seen fit to create.

**Other Examples.** More broadly, Congress has legislated extensively with respect to prisoner rights. As the Supreme Court recognized in *Abassi*, "[s]ome 15 years after Carlson was decided, Congress passed the [PLRA], which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Abbasi*, 137 S. Ct. at 1865 (citing 42 U.S.C. § 1997e). "So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Id.* Thus, *Abbasi* itself makes clear that Congress could have extended the *Carlson* damages remedy to cases involving other

14

types of prisoner mistreatment, but chose not to, *id.*, a special factor that counsels against judicial creation of such a remedy in this case.

**Alternative Remedies.** In addition, there is an existing, alternative process through which the Plaintiff can seek relief. *See Abbasi*, 137 S. Ct. at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."). "[I]f Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Id.* (quoting *Wilkie*, 551 U.S. at 550). "So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability." *Malesko*, 534 U.S. at 69.

Here, that existing, alternative process is the Federal Tort Claims Act ("FTCA"). The FTCA provides a limited waiver of sovereign immunity for injured litigants to sue the United States for torts committed by federal employees. *See* 28 U.S.C. §§ 1346(b)(1), 2674. It is unclear whether Plaintiff could present a claim under the FTCA that would entitle him to any relief, but for purposes of the present analysis it suffices that an alternative process merely exists. *See Wilkie*, 551 U.S. at 552 (no *Bivens* remedy because the plaintiff "had the means to be heard" through an existing, alternative process, regardless of his success there). Thus, because Plaintiff had (and has, assuming he properly exhausts and meets other statutory criteria) a "means to be heard" in the FTCA, the "Judiciary [should] stay its *Bivens* hand." *Wilkie*, 551 U.S. at 552, 554.

**Systemwide Costs.** The *Abbasi* Court further instructed that "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide." 137 S. Ct. at 1858. The systemwide costs include "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself." *Id.*

15

These burdens and costs are high particularly in the prison context based, in part, on the sheer volume of potential suits arising from the creation of a new *Bivens* remedy. Indeed, at this time, there are more than 150,000 inmates in BOP custody and nearly 40,000 BOP employees.[6] *See, e.g.*, *Hernandez v. United States*, 34 F. Supp. 3d 1168, 1181–82 (D. Colo. 2014) (expressing doubt that Congress intended to "permit lawsuits arising from the TSA's millions of daily screenings") (citing H. Res. No. 156, 113th Cong. (2013)). Add to that the unique societal costs of unfettered litigation by inmates, who typically "stand[] to gain something and lose nothing" from frivolous complaints and may enjoy "a short sabbatical in the nearest federal courthouse." *Cruz v. Beto*, 405 U.S. 319, 326–27 (1972) (Rehnquist, J., dissenting).

**Difficulty in Creating a Workable Cause of Action.** Another special factor counselling hesitation here is the apparent difficulty in creating a workable cause of action. *See Abbasi*, 137 S. Ct. at 1864-65 (discussing as a special factor the lack of clarity as to the legal standard of deliberate indifference claim alleging a warden allowed staff to abuse pretrial detainees); *Vanderklok v. United States*, 868 F.3d 189, 199–200 (3d Cir. 2017) (recognizing that "the inherent uncertainty surrounding the probable cause standard is itself a factor counseling hesitation"). Plaintiff's claim in this case implicates BOP policies and procedures—including, especially, policies and procedures surrounding PREA. But Congress and the Supreme Court have repeatedly deferred to the Attorney General and prison administrators' expertise on such matters, counseling against judicial intervention in this realm. *See, e.g.*, 18 U.S.C. § 4001 (delegating control and management of federal prisons to the Attorney General to promulgate rules and regulations); *Jones v. North Carolina Prisoner's Union*, 433 U.S. 119, 127 (1977) (explaining that, while there is a

---

[6] *See* BOP Website, https://www.bop.gov/about/agency/ (last visited Mar. 29, 2021).

need to protect "certain basic rights of inmates," reforms in prison administration are best left to "those with the most expertise in this field," not the courts).

*   *   *

Accordingly, because Plaintiff's claim arises in a new *Bivens* context, and because special factors preclude a *Bivens* remedy here—including (1) the existence of PREA, (2) other examples of congressional intent such as the PLRA, (3) alternative remedies in the FTCA, (4) systemwide costs associated with the creation of another *Bivens* remedy in the prison context, and (5) the difficulty in creating a workable cause of action—the Court should dismiss the First Amended Complaint for failure to state a claim. *E.g.*, *Abbasi*, 137 S. Ct. at 1857.

## CONCLUSION

For all of the foregoing reasons, Massouh respectfully requests that the Court grant this motion and dismiss the First Amended Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, for insufficient service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, and for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: March 29, 2021

Respectfully submitted,

BEN MASSOUH
Cook Supervisor at FMC Devens

By his attorneys appointed
pursuant to 28 C.F.R. § 50.15,

NATHANIEL MENDELL
Acting United States Attorney

By: */s/ Jason C. Weida*
Jason C. Weida
Assistant U.S. Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3180

Jason.Weida@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent by paper copy to pro se plaintiff by regular mail, postage prepaid, at the following address:

Gregory Paul Violette
21 Summer Street
Madison, ME 04950

/s/ Jason C. Weida
Jason C. Weida

Dated:  March 29, 2021          Assistant U.S. Attorney